UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KURT W. PAULUS, et al.,
    Plaintiffs,

v.

Case no. 2:12-cv-856
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

CITICORP NORTH AMERICA, INC., et al.,
    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants Citicorp North America, Inc.'s and Citigroup Technology, Inc.'s (collectively "Citi") motion to dismiss the amended complaint. Doc. 18. For the reasons that follow, the motion to dismiss is **DENIED**. Citi's previous motion to dismiss, doc. 8, is also **DENIED** as moot.

## I. BACKGROUND

Plaintiffs Kurt and Janene Paulus ("the Pauluses") live in Liberty Township, located in Delaware County, Ohio. Doc. 17 ¶ 3. They bought a parcel of land there, built a house on it, and have lived there since 1982. *Id.* In 2003, the Pauluses formed—and named themselves co-trustees of—a joint living trust. *Id.* ¶ 4. They transferred ownership of their house and their land to the trust. *Id.* The trust has acquired three surrounding, contiguous parcels since. *Id.*

The Pauluses bring this lawsuit in their personal and trustee capacities based on interactions with Citi since 2008. In August of that year, Citi completed construction and began operating a data center near the Pauluses' property. *Id.* ¶ 8. According to the Pauluses, Citi's data center relies on a number of standby power generators in the event of a power outage. *Id.* Although rarely needed for an actual power outage, the Pauluses allege that Citi tests the

1

generators regularly, "for hours at a time during the day and/or night," both on the weekdays and the weekends. *Id.*

According to their complaint, Citi's power-generator testing has created a series of problems for the Pauluses. They allege that the generators "produce a loud, annoying noise that" they can hear "both inside and outside of their home" during all hours of the day. *Id.* ¶ 9. They also allege that the noise causes their windows to vibrate, *id.*; forces them to close their windows "instead of enjoying the natural ventilation from the outside air," *id.*; wakes them up between the hours of 10:00 p.m. and 5:00 a.m., and then prevents them from going back to sleep, *id.*; causes them sleep deprivation, which hurts their performance at work, *id.*; and prevents them from "the quiet enjoyment of their home and yard during their leisure time," *id.*

The parties have been unable to work out the generator-testing issue between themselves. The Pauluses assert that they have let Citi know about the problem for years. *Id.* ¶ 10. They give a specific example of a September 2011 meeting they had with Citi representatives. According to the complaint, both parties were able to reach a compromise at the meeting—Citi refused to turn down the volume of the testing because of the cost they might incur to do so, but the company did say that it would try to shift testing to weekday work hours. *Id.* Despite the compromise, the Pauluses contend that Citi has full control over the hours and noise level of the testing, but that it has not yet changed either. *Id.* ¶¶ 10–11.

Based on the above, the Pauluses name the collective Citi parties as Defendants in this case. They originally filed their case in the Delaware County, Ohio Court of Common Pleas in August of 2012. Doc. 6. Citi removed the case to this Court in September of 2012 on the basis of diversity jurisdiction. Doc. 1. The Pauluses' claims remain the same, all under Ohio law— one for negligence, one for public nuisance, and one or private nuisance. They seek damages for

2

the discomfort caused by the noise. *Id.* ¶ 13. The Pauluses contend that they will never be able to sell their house, so they also seek damages for the permanent loss of their property value. And they seek an injunction to end the noise so that they can enjoy their property. *Id.*

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed pursuant to Rule 12(b)(6) "if on the face of the complaint there is an insurmountable bar to relief." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 690 (S.D. Ohio 2012). Insurmountable bars to relief include situations where "there is no law to support the claims made, or if the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Resource Conservation Serv.*, No. 2:12-CV-0299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)).

As to alleging facts in a sufficient manner, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The Supreme Court has laid out a "two-pronged approach" for determining facial plausibility. *Iqbal*, 556 U.S. at 679. First— "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second—focus on the remaining "well-pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Id.*

3

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When making this determination, a court must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

### III. DISCUSSION

As a preliminary matter, this is Citi's second motion to dismiss. In response to the complaint, Citi first moved to dismiss this action for failure to state of claim in October of 2012. Doc. 8. A few months later, the parties stipulated to the Pauluses' submission of an amended complaint. Doc. 16; doc. 17. Citi subsequently moved to dismiss the amended the complaint. Doc. 18. This Circuit has held that "[a]n amended complaint supersedes an earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litig.*, __ F.3d __, No.13-1608, 2013 WL 5338010, at *2 (6th Cir. 2013) (citing *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009)). This means that the Pauluses' "first amended complaint, not [their] original complaint, [is] the legally operative complaint for [this] motion." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000). It further means that Citi's current motion to dismiss, doc. 18, moots its previous motion to dismiss, doc. 8.

4

## A. Private Nuisance

The Pauluses bring a claim for private nuisance alleging that the noise coming from Citi's generators unreasonably interferes with their ownership and possessory rights. Private nuisance actions protect against "nontrespassory invasion of another's interest in the private use and enjoyment of land." *Brown v. Scioto Cnty. Bd. of Comm'rs*, 87 Ohio App. 3d 704, 712, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993). Ohio courts broadly define private nuisance as an invasion "either (a) intentional and unreasonable, or (b) unintentional and caused by negligent, reckless or abnormally dangerous conduct." *Id.* Courts have read these as two separate types of private nuisance claims—one for absolute nuisance, and one for qualified nuisance. The Pauluses assert a claim under each theory.

Case law in Ohio indicates an initially broad definition for absolute nuisance:

Absolute nuisance . . . may be defined as a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injur[es] another in the enjoyment of his legal rights.

*Taylor v. City of Cincinnati*, 143 Ohio St. 426, 426, 55 N.E.2d 724, 725 (Ohio 1944) (syllabus). For shorthand, absolute nuisance now applies to "inherently injurious activities [that] cannot be conducted without damaging someone else's property or rights," or an invasion stemming from "intentional conduct" or "abnormally dangerous conditions." *Brown*, 87 Ohio App. 3d at 713, 622 N.E.2d at 1159. Under any definition, the invasion that leads to a nuisance claim must be "unreasonable," defined as one that "persons of ordinary tastes and sensibilities would regard as

5

an inconvenience or interference materially affecting their physical comfort to a degree which would constitute a nuisance." *O'Neil v. Atwell*, 73 Ohio App. 3d 631, 636, 598 N.E.2d 110, 113 (Ohio Ct. App. 1991); *see also Gevelaar v. Millennium Inorganic Chems.*, No. 2012–A–0013, 2013 WL 501745, at *5 (Ohio Ct. App. Feb. 8, 2013) (noting that this definition of an unreasonable interference applies to both absolute and qualified nuisance claims). Also, unlike a claim of qualified nuisance, discussed below, strict liability applies to absolute nuisance. *Taylor*, 143 Ohio St. at 436, 55 N.E.2d at 729.

As to qualified nuisance, it applies to "the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in an injury." *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St. 3d 274, 275, 595 N.E.2d 855, 856 (Ohio 1992); *see also Brown*, 87 Ohio App. 3d at 713, 622 N.E.2d at 1159 ("[Qualified nuisance] consists of a lawful act that is so negligently or carelessly done as to have created an unreasonable risk of harm which in due course results in injury to another."). In other words: "The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist." *Allen Freight Lines*, 64 Ohio St. 3d at 275, 595 N.E.2d at 856. Under this theory, "negligence must be averred and proven to warrant a recovery." *Taylor*, 143 Ohio St. at 441, 55 N.E.2d at 731.

The Pauluses have alleged the following to support their private nuisance claim under each theory: that Citi tests its generators at all hours of the day; that the generators emit a noise loud enough to shake the Pauluses' windows; that the testing carries on for hours at a time, both during the day and at night, both during the week and on the weekends; and that this has disrupted the Pauluses' sleep patterns, caused them sleep deprivation, hurt their performance at work, diminished the value of their house, and materially changed—for the worse—their use and

6

enjoyment of their property, as well as their overall quality of life. *See* doc. 17 ¶¶ 9–13. They further allege that Citi has full control over the testing, has met with the Pauluses regarding the couple's concerns—and thus knows about the alleged discomfort, and has still done nothing.

The Court finds these pleadings satisfy facial plausibility for a private nuisance claim under each theory. Applied to absolute nuisance, the Pauluses allege that the generators have disrupted the their sleep patterns, caused them sleep deprivation, hurt their performance at work, diminished the value of their house, and materially changed—for the worse—their use and enjoyment of their property, as well as their overall quality of life. *See* doc. 17 ¶¶ 9–13. This injury meets the bar of "what persons of ordinary tastes and sensibilities would regard as an inconvenience or interference materially affecting their physical comfort to a degree which would constitute a nuisance." *O'Neil*, 73 Ohio App. 3d at 636, 598 N.E.2d at 113. Further, Ohio law allows plaintiffs to base an absolute nuisance claim on "intentional conduct." *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St. 3d 1, 13, 780 N.E.2d 998, 1010 (Ohio 2002). The pleadings allege facts showing that Citi proceeded intentionally with its generator testing schedule, with the knowledge that it has harmed the Pauluses quality of life, enjoyment of their land, sleep patterns, and work performance. The Pauluses thus allege a facially plausible claim for absolute nuisance.

The same holds for their claim of qualified nuisance. The Pauluses properly allege negligence as an independent count. *See* doc. 17 ¶¶ 15–19. They properly allege facts showing that Citi is a nearby landowner, thus triggering the existence of a duty for Citi not to use its "property in such a manner that [it] unreasonably disturb[s] [its] neighbors." *Sakler v. Huls*, 20 Ohio Op. 2d 283, 183 N.E.2d 152, 156 (Ohio Ct. C.P. 1961); *see also Oyster v. S.M.E. Cement Co.*, Nos. CA-7098, CA-7207, 1987 WL 27834, at *4 (Ohio Ct. App. Nov. 5, 2004) (explaining the duty as one "not to allow . . . property to become a nuisance to neighboring property

7

owners"). The above pleadings, taken as true, also sufficiently allege "the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in an injury." *Allen Freight Lines*, 64 Ohio St. 3d at 275, 595 N.E.2d at 856. Accordingly, the Pauluses also state a facially plausible claim for qualified nuisance.

On the other side, Citi argues that the Court should dismiss the Pauluses' claims for private nuisance. Rather than arguing against a specific avenue (whether qualified or absolute), Citi instead advances several arguments that it contends the Pauluses cannot, as a matter of law, overcome. These arguments fail to undercut the facial plausibility of the Pauluses' claims.

Citi's first argument deals with the degree of harm necessary for a nuisance claim. The injury in a nuisance action "must be real, material, and substantial." *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St. 3d 210, 213, 932 N.E.2d 313, 317 (Ohio 2010). Contrary to Citi's assertion, the Pauluses do plead an injury that satisfies this standard. Their alleged inability to go outside and enjoy their property when the generators operate, as well as their alleged sleep deprivation, for example, amount to allegations of an "appreciable, substantial, tangible injury resulting in actual, material, physical discomfort." *Antonik v. Chamberlain*, 81 Ohio App. 465, 476, 78 N.E.2d 752, 759 (Ohio Ct. App. 1947); *see, e.g., Myers v. Wild Wilderness Raceway, L.L.C.*, 181 Ohio App. 3d 221, 230, 908 N.E.2d 950, 958 (Ohio Ct. App. 2009) (noting that loud noise from a race track "virtually ended [surrounding neighbors'] outdoor activities," which was sufficient for a claim of private nuisance); *Christensen v. Hilltop Sportsman Club, Inc.*, 61 Ohio App. 3d 807, 811–12, 573 N.E.2d 1183, 1186 (Ohio Ct. App. 1990) (shooting on a gun range late at night and at otherwise "random and unpredictable times" counted as sufficient for a qualified nuisance claim).

8

Citi also asserts a "coming to the nuisance" defense. It cites several pre-1950 Ohio cases for the proposition that residents must sometimes deal with noise incident to commercial or industrial activity. It frames this noise—and the surrounding residents coping with this noise—as an "incident of living in an age of progress." *Antonik*, 81 Ohio App. at 478, 78 N.E.2d at 760.

Citi's argument does not affect the facial plausibility of the Pauluses' private nuisance claim at the motion to dismiss stage. Ohio courts do not view the coming-to-the-nuisance defense as an absolute bar to a nuisance complaint. *See, e.g.*, *Williams v. Oeder*, 103 Ohio App. 3d 333, 338, 659 N.E.2d 379, 382 (Ohio Ct. App. 1995). Rather, "the argument may be considered as one factor among others relevant in determining whether a defendant's operations are unreasonable." *Oeder*, 103 Ohio App. 3d at 338, 659 N.E.2d at 382. In this case, the Pauluses have a few factors in their favor—they built their house in a residential area in 1982, doc. 17 ¶ 2, while Citi built its data center in 2008, *id.* ¶ 7. On the other side, Citi argues that the Court should take judicial notice of how close the Pauluses live to the data center, and that the data center sits on commercially zoned land. Even if judicial notice were taken, this would not tip the scales so much in Citi's favor as to dismiss the claim—particularly not at the motion-to-dismiss stage; not when this counts as one part of the reasonable-conduct analysis; and not when this situation differs from the cases Citi cites in support of its coming-to-the-nuisance defense, *see, e.g.*, *Eller v. Koehler*, 68 Ohio St. 51, 57, 67 N.E. 89, 91 (Ohio 1903) (defendant's "manufacturing plant is situate[d] in a part of the city which is and has been devoted to like business purposes, and was so at the time said plant was constructed"); *De Albert v. Novak*, 78 Ohio App. 80, 84, 69 N.E.2d 73, 75 (Ohio Ct. App. 1946) (two private residents fighting over farm-animal noise in a farming community).

In short, the Court finds that Citi's arguments fail to carry the day, and that the Pauluses complaint presents a facially plausible claim for private nuisance. Citi's motion to dismiss is thus denied on this count.

## B. Public Nuisance

Ohio law defines a public nuisance as "an unreasonable interference with a right common to the general public." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 419, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting 4 Restatement (Second) of Torts § 821B(1) (1965)). An "unreasonable interference" with a public right includes, among others, "those acts that significantly interfere with public health, safety, peace, comfort, or convenience." *Id.* Plaintiffs alleging public nuisance claims may do so under common law or under public statute. *Brown*, 87 Ohio App. 3d at 712, 622 N.E.2d at 1159. The Pauluses do so as a matter of common law. Plaintiffs alleging public nuisance claims may also do so under a theory of absolute nuisance, or under a theory of qualified nuisance. *Brown*, 87 Ohio App. 3d at 713, 622 N.E.2d at 1159. The Pauluses allege both, and the absolute- and qualified-nuisance analysis for the Pauluses' public nuisance claims thus tracks that of their private nuisance claims.

Citi does not contest their public nuisance claim on any of the above grounds. Instead, it focuses on an important difference between a public nuisance and a private nuisance claim. Private citizens generally do not have standing to bring public nuisance claims. They may only do so if they "establish (1) an interference with a public right and (2) that [they] ha[ve] suffered an injury distinct from that suffered by the public at large." *Kramer v. Angel's Path, L.L.C.*, 174 Ohio App. 3d 359, 367, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007). Citi contests the Pauluses' public nuisance claims on both points.

10

Citi's arguments fail to convince on both disputed fronts, and the Court finds that the Pauluses have stated a facially plausible claim for public nuisance. With regard to the public-right part, Citi argues that, according to the Pauluses' complaint, the noise only affects two other families, meaning it could not possibly affect the public at large. Doc. 22 at 3. On the contrary, the Pauluses allege that the generators disturb "much of the neighborhood." Doc. 17 ¶ 22. The Court finds this a sufficient allegation of an "unreasonable interference" with the "public . . . peace, comfort, or convenience." *Beretta*, 95 Ohio St. 3d at 419, 768 N.E.2d at 1142 (Ohio 2002); *see also Clabaugh v. Harris*, 27 Ohio Misc. 153, 155, 273 N.E.2d 923, 925 (Ohio Ct. C.P. 1971) ("If a whole neighborhood or any considerable number of persons are annoyed, it is a public nuisance.").

Citi also argues that the Pauluses fail to allege an injury distinct from that of its neighbors and the public at large. In order to satisfy this special-injury rule, a plaintiff must allege harm "different in kind, rather than different in degree, from that suffered by other members of the public." *Angel's Path*, 174 Ohio App. 3d at 367, 882 N.E.2d at 52. As to the public, the Pauluses' allegations lead to the reasonable interference that the generators operate as a general annoyance to their neighborhood. *See* doc. 17 ¶ 22. As to their own situation, the Pauluses allege several injuries that qualify as different in kind than a general annoyance. As one, they allege that they have lost the ability to sell their house; Ohio law recognizes a decrease in property value as a compensable nuisance-related injury, *Banford*, 126 Ohio St. 3d at 213, 932 N.E.2d at 317 ("Damages for nuisance may include diminution in the value of the property."). As another, they allege sleep deprivation and a diminished performance at work. These amount to injuries different in kind than those of the rest of the neighborhood, as they are "concerns" that

11

affect the Pauluses "more than they do the community in which [they] live[]." *Thompson v. Argent Mortg. Co., LLC*, No. 94613, 2010 WL 3747601, at *3 (Ohio Ct. App. Sept. 23, 2010).

In short, the Pauluses allege injuries different in kind than their neighbors, and they allege facts amounting to a facially plausible claim for public nuisance. Citi's motion to dismiss is denied on this count.

## C. Negligence

In order to maintain an action for negligence at this stage, a plaintiff must allege facts showing: a "duty running from the defendant to the plaintiff, breach of duty by that defendant, damages suffered by the plaintiff, and a proximate cause relationship between the breach of duty and the damages." *Hester v. Dwivedi*, 89 Ohio St. 3d 575, 578, 733 N.E.2d 1161, 1164 (Ohio 2000). Citi does not contest the negligence claim on facial-plausibility grounds. Instead, Citi argues that the claims of negligence and nuisance merge as a matter of law, which means that the Court should dismiss the Pauluses' negligence claim. The Pauluses disagree and argue that they assert a negligence claim independent of their nuisance claim.

The Court acknowledges a gray area in Ohio as it pertains to the parties' argument on this issue. As explained in the private-nuisance analysis, the torts of negligence and qualified nuisance are intertwined. *See Allen Freight Lines*, 64 Ohio St. 3d at 275, 595 N.E.2d at 856. The Pauluses thus correctly point out that they had to plead negligence, or facts supporting negligence, as "a qualified nuisance claimant must plead and prove the traditional elements thereof: duty, breach, proximate causation, and damages." *City of Cleveland v. Ameriquest Mortg. Securities, Inc.*, 621 F. Supp. 2d 513, 521 (N.D. Ohio 2009) (citing *Allen Freight Lines*, 64 Ohio St. 3d 274, 595 N.E.2d 855, and *Brown*, 87 Ohio App. 3d 704, 622 N.E.2d 1153), *aff'd sub nom. City of Cleveland v. Ameriquest Mortg. Securities, Inc.*, 615 F.3d 496 (6th Cir. 2010).

Accordingly, the Ohio Supreme Court has held that the "allegations of nuisance and negligence . . . merge, as the nuisance claims rely upon a finding of negligence." *Allen Freight Lines*, 64 Ohio St. 3d at 276, 595 N.E.2d at 856.[1]

The gray area exists when the law above applies to the pleading stage. Citi reads Ohio cases to preclude the Pauluses from proceeding with an independent claim for negligence. On its face, this seems a possible interpretation. Still, several factors counsel against the Court granting Citi's motion to dismiss on this count.

First, the context of the cases on point matters. They have held that nuisance and negligence merge, but they have done so when ruling at the summary-judgment stage. *See Allen Freight Lines*, 64 Ohio St. 3d at 274, 595 N.E.2d at 855; *Ogle v. Kelly*, 90 Ohio App. 3d 392, 394, 629 N.E.2d 495, 497 (Ohio Ct. App. 1993); *Brown*, 87 Ohio App. 3d at 717, 622 N.E.2d at 1162; *Merino v. Salem Hunting Club*, No. 07 CO 16, 2008 WL 5124549, at *1 (Ohio Ct. App. Dec. 4, 2008). This differs from holding directly that the claims merge as a matter of law at the motion-to-dismiss stage. To this end, other courts have implicitly held under Ohio law that the negligence and nuisance claims may proceed beyond the pleadings stage. *See, e.g., Green v. Begley Co.*, No. 1:08CV77, 2008 WL 4449065, at *2–3 (S.D. Ohio Sept. 29, 2008); *Nuckols v. Nat'l Heat Exch. Cleaning Corp.*, No. 4:00CV1698, 2000 WL 35596698, at *3–7 (N.D. Ohio Dec. 11, 2000); *Neville v. City of Wyoming*, No. C–020064, 2002 WL 31094766, at *3 (Ohio Ct. App. Sept. 20, 2002). This context leads to the conclusion here that it would be imprudent to

---

[1] For clarity's sake, the *Allen Freight Lines* Court applied this rule in the context of a qualified nuisance claim. While "qualified nuisance is premised upon negligence," absolute nuisance is premised "upon intentional conduct or abnormally dangerous conditions." *Brown*, 87 Ohio App. 3d at 713, 622 N.E.2d at 1159. In other words, contrary to Citi's assertion, the potential merge between claims only applies to qualified nuisance and negligence. A claim of absolute nuisance does not require proof of negligence, meaning a claim of absolute nuisance and a claim of negligence do not merge. *See id.*

13

dismiss the Pauluses' qualified nuisance claims for no other reason than that they might eventually merge with their negligence claim.

Second, given the analysis to this point, the Pauluses have presented a facially plausible claim for negligence. Taken as true, the allegations lead to inferences of a duty (for Citi, as a nearby landowner, not to use its "property in such a manner that [it] unreasonably disturb[s] [its] neighbors," *Sakler*, 20 Ohio Op. 2d 283, 183 N.E.2d at 156); a breach of that duty (by running its generators during nights and weekends); that caused the damages at issue (diminished quality of life, decreased property value, sleep deprivation, and poor performance at work). Regardless of the fact that their negligence and qualified nuisance claims might eventually merge, they have stated a facially plausible claim for which relief could be granted. It thus follows that their negligence claim should not be dismissed. Accordingly, Citi's motion is denied on this count.

## D. The Economic Loss Doctrine

According to Ohio's economic loss doctrine, tort claimants cannot recover "indirect economic damages that do not arise from tangible physical injury to persons or from tangible property." *Ashtabula River Corp. Group II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 987 (N.D. Ohio 2008) (citing *Queen City Terminals v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609, 653 N.E.2d 661 (1995)); *see Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414, 835 N.E.2d 701, 704 (Ohio 2005) ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss."). The doctrine seeks to prevent recovery for damages not recognized as "legally cognizable." *Corporex*, 106 Ohio St. 3d at 414, 835 N.E.2d at 704. It also attempts to prevent awarding damages for tort claims better left to the province of contract law. *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 45, 537 N.E.2d 624, 630–31 (Ohio 1989) ("[T]he law of negligence does not extend the

14

manufacturer's duty so far as to protect the consumer's economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties."). The parties disagree about whether the doctrine applies to this case. Citi argues that it does, and that it bars all of the claims at issue. The Pauluses disagree, arguing that the doctrine does not apply to this case and that, even if it does, it does not bar the claims here.

Assuming the economic loss doctrine applies to these facts, they do not bar the Pauluses' claims. First, the Pauluses' alleged damages do not qualify as indirect. *See Ashtabula River*, 549 F. Supp. 2d at 987 (noting that tort claimants cannot recover "*indirect* economic damages that do not arise from tangible physical injury to persons or from tangible property" (emphasis added)). Ohio law classifies indirect economic damages as "consequential" damages, or those akin to the value of time lost or lost profits. *Queen City Terminals*, 73 Ohio St. 3d at 614, 653 N.E.2d at 667. On the other end, the economic loss rule does not prevent direct economic damages, such as "the loss attributable to the decreased value of [a] product." *Id.* In some cases, like the one here, "the better practice" for analyzing damages is to do so "within the context of the transaction, considering the relationship between the parties." *Chemtrol Adhesives*, 42 Ohio St. 3d at 45, 537 N.E.2d at 630. In this case, to the extent the Pauluses assert purely economic damages, the damages are direct—they allege, for example, the lost value of their house as a result of conduct they see as tortious. This is not akin to consequential damages or lost profit, rather more in alignment with "the loss attributable to the decreased value of [a] product." *Queen City Terminals*, 73 Ohio St. 3d at 614, 653 N.E.2d at 667. Because these qualify as direct economic damages, the economic loss doctrine does not bar the claims at issue.

Second, even if classified as "indirect," the Pauluses' alleged damages "arise from tangible physical injury to persons or from tangible property." *Ashtabula River*, 549 F. Supp. 2d

15

at 987. In this case, the Pauluses have alleged a diminished quality of life, sleep deprivation, and diminished performance at work. These amount to harms that Ohio courts view as tangible, redressable nuisance-related injuries. *See, e.g.*, *Brown*, 87 Ohio App. 3d at 716, 622 N.E.2d at 1161 ("[I]n some circumstances discomfort and annoyance may constitute a nuisance."). Further, they allege loss of their own property value, which Ohio law classifies as an injury to property "capable of compensation in money." *Antonik*, 81 Ohio App. at 479, 78 N.E.2d at 760; *see* Banford, 126 Ohio St. 3d at 213, 932 N.E.2d at 317 ("Damages for nuisance may include diminution in the value of the property."). This makes the Pauluses' allegations different from the facts of cases where the economic loss doctrine applied to bar damages. *See, e.g.*, *Ashtabula River*, 549 F. Supp. 2d at 987 (plaintiff alleged economic injuries related to land it did not own); *RWP, Inc. v. Fabrizi Trucking & Paving Co., Inc.*, No. 87382, 2006 WL 2777159, at *4 (Ohio Ct. App. Sept. 28, 2006) (damaged property led to economic loss, but plaintiffs did own the property—economic loss doctrine thus barred their claims because they "failed to establish that they suffered harm to their persons or their property"). Accordingly, the economic loss doctrine does not bar the Pauluses' claims.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Citi's motion to dismiss. Doc. 18. Citi's previous motion to dismiss is also **DENIED** as moot. Doc. 8.

**IT IS SO ORDERED.**

9-30-2013

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**